Filed 8/10/21  P. v. Millbrook CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEREMY L. MILLBROOK,<br><br>Defendant and Appellant. | A160684<br><br>(Alameda County<br>Super. Ct. No. H49349) |

In December 2009, when he was 18 years old, defendant Jeremy Millbrook fired one shot at Sione Manoa while the two were arguing at a party.  The bullet hit Manoa in the chest and also struck the hand of Matthew Galvan, Manoa's friend who was trying to defuse the argument.  In the first trial in this case, a jury convicted Millbrook of attempted murder of Manoa, assault with a firearm on Manoa, and assault with a firearm on Galvan.  This court reversed the conviction for attempted murder, concluding that the trial court erred by not instructing the jury on the lesser included offense of attempted voluntary manslaughter.  (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1151 (*Millbrook I*).)

The case was retried, and a jury again convicted Millbrook of attempted murder.  The jury also found true several enhancements involving the use of firearms and the infliction of great bodily injury.  The trial court sentenced

1

Millbrook to a total term of 35 years and four months to life in prison. This sentence included a term of 25 years to life for a firearm enhancement under Penal Code section 12022.53, subdivision (d) (section 12022.53(d)), attached to the attempted murder charge.[1] The sentence also included a term of one year and four months for a firearm enhancement under section 12022.5, subdivision (a) (section 12022.5(a)), attached to the charge of assaulting Galvan. Another term of one year for a firearm enhancement under section 12022.5(a), attached to the charge of assaulting Manoa, was imposed but stayed.

Millbrook again appealed after he was sentenced. While the appeal was pending, Senate Bill No. 620 (2017–2018 Reg. Sess.) went into effect, giving courts the discretion to strike or dismiss firearm enhancements in the interest of justice pursuant to section 1385. This court subsequently affirmed the convictions but remanded for the trial court to consider whether to strike any firearm enhancement. (*People v. Millbrook* (Nov. 29, 2018, A148286) [nonpub. opn.] (*Millbrook II*).)

On remand after *Millbrook II*, the trial court determined it would not strike the section 12022.53(d) enhancement that was attached to the attempted murder charge nor impose a lesser enhancement. The court did not explicitly address the section 12022.5(a) enhancements on the assault convictions.

On appeal, Millbrook argues that the trial court (1) abused its discretion in not striking the section 12022.53(d) enhancement or imposing a lesser one; and (2) was unaware of its discretion to strike the

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

section 12022.5(a) enhancement on the Galvan assault count.[2]  We reject these arguments and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

On December 19, 2009, Fernanda Plascencia held a party at her San Leandro home to celebrate her birthday.[3]  Among the guests was 19-year-old Jennifer Diaz, a close friend of Plascencia, and Millbrook, Diaz's fiancé.  The guests also included 20-year-old Manoa and 21-year-old Galvan, both co-workers of Plascencia.  Most of the guests, including Manoa and Galvan, were drinking alcohol.  At some point during the party, Manoa and Diaz began to argue, yelling and cursing at each other.  Around the same time, Manoa also argued with Bianca Velez, another friend of Plascencia and Diaz.

Millbrook soon confronted Manoa in the kitchen about Manoa's behavior towards the women, and the two men began to argue.  Galvan stepped between them, facing Manoa, and tried to defuse the argument.  Manoa's hands were clenched, and Galvan was concerned the fight would turn physical.  Manoa told Millbrook, " 'You better check your bitch,' " and threatened to beat him up as well.  Millbrook testified that Manoa seemed to be trying to get around Galvan to attack either him or Diaz.  Millbrook then pulled out a gun and fired it at Manoa.

_____

[2] Millbrook does not challenge the section 12022.5(a) enhancement attached to the Manoa assault count.

[3] We draw the underlying facts from *Millbrook II*, which addressed the evidence presented at the second trial.  As we explained in that opinion, there were some differences between that evidence and the evidence presented at the first trial, but they are not material to this appeal except as discussed further below.

3

Manoa was shot in the chest, and it was stipulated that he suffered great bodily injury. The bullet is still lodged in his spine and cannot be removed, posing an ongoing risk of paralysis. Galvan was shot in the hand. An unfired bullet and cartridge case and a cartridge case from a fired bullet were found in the kitchen. This evidence suggested that Millbrook's gun had a bullet in the chamber when he pulled it out, that he unnecessarily ejected that bullet by manually racking the gun's slide, and that he fired one shot.

After the gunshot, guests dispersed, and Millbrook and Diaz fled the party, disposed of the gun, and drove to Reno. Millbrook was soon apprehended.

Millbrook's explanation of the shooting changed over time. He originally denied to the police that he had ever been at the party. In the first trial, he admitted that he shot Manoa but claimed he did so only after Manoa pulled a gun on him, which no other witness or evidence corroborated. (*Millbrook I*, *supra*, 222 Cal.App.4th at pp. 1133–1134.) In the second trial, Millbrook claimed that he pulled out the gun because he was angry and felt disrespected. He wanted Manoa to back down, so he racked the slide to show Manoa that he "meant business." Millbrook testified that the gun then accidentally discharged and that he never intended to fire it or shoot Manoa.

The second jury convicted Millbrook of attempted murder and found true the enhancement allegation that he personally and intentionally discharged a firearm causing great bodily injury to Manoa.[4] As affirmed in *Millbrook I*, Millbrook also stood convicted of assault with a firearm on

---

[4] Millbrook was convicted of attempted murder under sections 187, subdivision (a), and 664, subdivision (a). As we have said, the accompanying firearm enhancement was found true under section 12022.53(d). It also appears from the record that the jury found true lesser enhancements under section 12022.53, subdivisions (b) and (c).

Manoa and assault with a firearm on Galvan, with accompanying enhancements on both convictions for personal use of a firearm and infliction of great bodily injury.[5]

As we have said, the trial court sentenced Millbrook to a total term of 35 years and four months to life. This sentence was composed of consecutive terms of seven years for the attempted murder; 25 years to life for the personal and intentional discharge of a firearm causing great bodily injury; one year for the assault with a firearm on Galvan; one year, four months for the personal use of a firearm during that assault; and one year for the infliction of great bodily injury during that assault. Terms of three years for the assault with a firearm on Manoa, four years for the personal use of a firearm during that assault, and three years for the infliction of great bodily injury during that assault were imposed and stayed.

In *Millbrook II*, Millbrook raised seven arguments, including one in which he sought a remand for the trial court to exercise its discretion under Senate Bill No. 620, which was enacted after he was sentenced in the second trial in April 2016.[6] At the time of the sentencing, the court had no discretion to strike enhancements under sections 12022.5(a) or 12022.53(d). (Former §§ 12022.5, subd. (c), 12022.53, subd. (h).) Senate Bill No. 620, however, went into effect on January 1, 2018, and it authorized trial courts "in the

---

[5] The assault convictions were under section 245, subdivision (a)(2), and the enhancement allegations were found true under sections 12022.5(a) (use of firearm) and 12022.7, subdivision (a) (great bodily injury).

[6] Millbrook also claimed, and this court agreed, that remand was required under *People v. Franklin* (2016) 63 Cal.4th 261 to ensure he had a sufficient opportunity to make a record for a future youth-offender parole hearing. Our record shows that the trial court scheduled a hearing to give Millbrook this opportunity, and the court's response to this aspect of *Millbrook II* is not at issue here.

interest of justice pursuant to Section 1385 and the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section." (§§ 12022.5, subd. (c), 12022.53, subd. (h).) The Legislature made it clear that Senate Bill No. 620 applied retroactively to all nonfinal cases. (*People v. Arredondo* (2018) 21 Cal.App.5th 493, 507–508.)

Thus, in *Millbrook II*, we remanded for the trial court to consider "whether the interest of justice will be vindicated by striking any of the firearm enhancements because their application is too severe in this case." Specifically, the disposition directed the trial court "to consider whether to strike or dismiss the firearm enhancements imposed under Penal Code sections 12022.5, subdivision (a)[,] and 12022.53, subdivision (d)."

On June 12, 2020, the trial court held a hearing on remand. After hearing arguments from counsel as to the section 12022.53(d) enhancement, the court refused to strike the enhancement or substitute a lesser enhancement under subdivision (b) or (c) of section 12022.53. The court did not explicitly address the section 12022.5(a) enhancements on the assault convictions, and they remained part of the sentence.

II.

DISCUSSION

A.    *The Trial Court Did Not Abuse Its Discretion in Not Striking or Dismissing the Section 12022.53(d) Enhancement.*

Section 12022.53 establishes three sentencing enhancements of varying lengths for the personal use of a firearm during the commission of certain felonies, including attempted murder. Subdivision (b) requires a 10-year enhancement for the personal use of a firearm during a qualifying offense, subdivision (c) requires a 20-year enhancement if the firearm is personally and intentionally discharged, and subdivision (d) requires a 25-years-to-life sentence if the firearm is personally and intentionally discharged and

6

proximately causes great bodily injury or death. The jury in the second trial found true enhancements under all three subdivisions. Because Senate Bill No. 620 amended section 12022.53 to provide the trial court with the discretion to strike or dismiss these enhancements and because the jury found true all three, it is settled that the court had discretion to strike the subdivision (d) enhancement and impose a subdivision (b) or (c) enhancement instead.[7]

At the hearing, Millbrook argued that mitigating factors, including his family background, his young age at the time of the offense, and the context of the shooting, warranted striking the section 12022.53(d) enhancement and imposing a lesser enhancement to make the sentence determinative. The prosecution argued that the trial court should not strike the enhancements, in part because Millbrook was not in imminent danger when he shot Manoa and Manoa suffered great bodily injury and still lives with the consequences of the bullet in his spine. The court declined to strike the section 12022.53(d) enhancement or impose a lesser enhancement. In doing so, the court stated, "I just can't reach the conclusion that I feel that the interest of justice would best be served or be better served by doing so, and therefore I should not exercise my discretion and strike the [section] 12022.53(d) enhancement."

On appeal, Millbrook argues that the trial court abused its discretion in not striking the section 12022.53(d) enhancement or in not imposing a lesser one under section 12022.53, subdivision (b) or (c). He further contends that

---

[7] The issue whether a trial court can strike a firearm enhancement under section 12022.53 and impose one of the lesser enhancements under the statute if the jury did *not* separately find the lesser enhancements true is currently on review in the Supreme Court. (*People v. Tirado* (2019) 38 Cal.App.5th 637, 639, review granted Nov. 13, 2019, S257658.) As the jury here did separately find true the enhancements under section 12022.53, subdivisions (b) and (c), this issue is not implicated here.

7

the court "gave little consideration to eliminating the indeterminate feature of [the] sentence and imposing a determinate enhancement in its place"; did not give "much thought to [his] age at the time of the crimes"; and did not consider that "the shooting occurred under conditions of great stress." We are not persuaded.

A trial court's refusal to dismiss a section 12022.53 firearm enhancement is reviewed under the deferential abuse of discretion standard. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*).) "A trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) The burden is on the appellant to show that the decision was irrational or arbitrary. (*Id.* at p. 376.)

To determine whether to strike a firearm enhancement in the interest of justice, trial courts should consider the factors from California Rules of Court, rule 4.428(b), as well as the general objectives of sentencing and the circumstances in aggravation and mitigation. (*Pearson, supra*, 38 Cal.App.5th at p. 117.) " '[U]nless the record affirmatively reflects otherwise,' " a trial court is deemed to have considered these factors. (*Ibid.*) The exercise of sentencing discretion must also be intensely fact-bound, and the record must reflect that such an inquiry occurred. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 981–982.) " '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling.' " (*Carmony, supra*, 33 Cal.4th at p. 374.)

Millbrook relies on *People v. Morrison* (2019) 34 Cal.App.5th 217 to argue that the trial court's considerations were inadequate and warrant remand. The decision does not aid him. In *Morrison*, the case was remanded

8

for resentencing because the record did not show that the trial court understood it could impose a lesser enhancement under section 12022.53, subdivision (b) or (c). (*Morrison*, at pp. 223–225.) In contrast, the record here shows that the trial court explicitly weighed the available options, stating, "[D]o I narrow it down to strike the D"—i.e., the section 12022.53(d) enhancement—"and give [Millbrook] the C"—i.e., the section 12022.53(c) enhancement—"and make it a determinate 30 year or so sentence?" The court also stated, "I got choices. One choice is, what you're asking me to do, is strike that punishment, 25 to life . . . . [¶] Or I could strike the 12022.53(d), which is the 25 to life, and drop it down to the C . . . . [¶] Or I could drop down even further and give him ten for the use." Further, the court recognized that it was "not just limited to all or nothing." The court was clearly aware of its discretion and available options.

The record also demonstrates that the trial court, which stated that it had "been wrestling with [its decision] for months," considered the relevant sentencing factors and applied them to the facts of this case. The court read the briefs, Millbrook's letter to the court, this court's *Millbrook II* opinion, and the probation report; and, having presided over the retrial and sentencing, took into account its own interactions with Millbrook. The court also explicitly considered the following factors: the seriousness of the offense; the fact that the attempted murder was intentional; the circumstances of the "heated argument"; the shooting's long-term health effects and risks for Manoa; the evolution of Millbrook's testimony; Millbrook's lack of a criminal record; Millbrook's sentence in comparison to the sentence in comparable cases; and Millbrook's age at the time of the offense.

Indeed, the trial court addressed Millbrook's age three times. It observed, "As we get older, we look back and we realize we really were young

9

and stupid . . . . [¶] So you got an 18-year-old guy who is packing a gun." The court also balanced "all these really bad things about this case, including the long-term effects on [Manoa]," against the fact that Millbrook was a "young and stupid 18-year-old who was stupid for even packing a gun in the first place." Finally, "weighing all these, the bad things against . . . the mitigating[,] . . . [¶] . . . [¶] [n]ot the least of which are, he's an 18-year old kid," the court concluded that the interests of justice would not be served by striking the section 12022.53(d) firearm enhancement.

Although the trial court did not explicitly reference the California Rules of Court, its considerations aligned with the relevant factors. (See, e.g., Cal. Rules of Court, rules 4.410 [general objectives of sentencing include punishing defendant and achieving uniformity in sentencing], 4.421 [circumstances in aggravation include great bodily harm and use of weapon], 4.423 [circumstances in mitigation include victim's provocation and defendant's clear record].) Nothing in the record suggests that the court failed to consider other required factors. (See Cal. Rules of Court, rule 4.409 ["Relevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise"].) Although Millbrook's briefing highlights the current sentencing trends that "acknowledge more factors which mitigate against . . . extremely long sentences," the factors in determining whether to strike a firearm enhancement are the same as those which a court must consider when handing down the sentence. (*Pearson*, *supra*, 38 Cal.App.5th at p. 118.)

The trial court here was aware that it had the discretion to strike the enhancement under section 12022.53(d) and to impose one of the lesser enhancements instead. In exercising its discretion, the court balanced the

10

contextual factors of the offense, including Millbrook's age at the time. The court did not abuse its discretion because its decision was not arbitrary or irrational.

> B. *The Trial Court Was Aware of Its Discretion to Strike the Section 12022.5(a) Enhancement, and We Presume the Trial Court Performed Its Duty.*

Millbrook also claims that the trial court abused its discretion in not striking the section 12022.5(a) enhancement on the assault conviction on Galvan. He contends that the court was unaware of its discretion to strike that enhancement as well. Again, we are not persuaded.

As we have said, Millbrook was convicted of assault with a firearm on Manoa and Galvan, and the jury found true section 12022.5(a) firearm enhancements on both charges. An enhancement under section 12022.5(a) adds an additional and consecutive term of imprisonment for 3, 4, or 10 years for personally using a firearm in the commission of a felony or attempted felony.[8] Millbrook's sentence included a consecutive term of one year, four months for the use of a firearm during the assault on Galvan, which is the only section 12022.5(a) enhancement challenged in this appeal. Senate Bill No. 620 gave trial courts discretion to strike section 12022.5(a) enhancements in the interest of justice. (*People v. Baltazar* (2020) 57 Cal.App.5th 334, 337; § 12022.5, subd. (c).)

An abuse of discretion can occur "where the trial court was not 'aware of its discretion.' " (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Where the record is silent, however, there is a presumption that the court correctly applied the law. (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1422; *People v. Gillispie*

---

[8] A section 12022.5(a) firearm enhancement can be imposed on a conviction of assault with a firearm even though the use of the firearm is an element of that offense. (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1212.)

11

(1997) 60 Cal.App.4th 429, 434; see Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)  This principle applies to statutory discretion at sentencing.  "[I]n light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion."  (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

True enough, the hearing here focused on the more consequential section 12022.53(d) enhancement, and neither the trial court nor counsel explicitly discussed exercising discretion to strike the section 12022.5(a) enhancements.  But this court's disposition in *Millbrook II* was clear in directing the trial court to determine whether to strike not only the section 12022.53(d) enhancement but also the section 12022.5(a) enhancements, and we see no reason to assume the trial court failed to heed these directions.  During the hearing, the court referenced, albeit indirectly, the section 12202.5(a) enhancement when it stated, "[A]m I going to exercise [the discretion] now and take some action with respect to the 12022.53 enhancement or enhancements that were found to be true by the jury."

In light of this record, we must presume the trial court understood its discretion and properly performed its duty.  In arguing otherwise, Millbrook cites *People v. Lua* (2017) 10 Cal.App.5th 1004, which involved a trial court's discretion under section 1385.  We do not find *Lua* helpful.  In that case, the record was ambiguous as to whether the trial court understood the scope of its discretion to strike certain drug-related enhancements.  (*Lua*, at p. 1020.)  Specifically, the trial court may have characterized 17 years as " 'the lowest sentence possible' " even though striking the enhancements would result in a sentence of less than 17 years.  (*Id*. at p. 1012.)  Due to this ambiguity, the

12

case was remanded for resentencing.  (*Id.* at p. 1022.)  The record here, however, contains no such ambiguity or suggestion that the trial court believed it was unable to strike the section 12022.5(a) enhancements.  In these circumstances, we assume the court performed its duty as directed by *Millbrook II,* and no remand is required.

III.
DISPOSITION

The judgment is affirmed.

13

_____

Humes, P.J.

WE CONCUR:


_____

Banke, J.


_____

Sanchez, J.


*People v. Millbrook*  A160684

14